The following constitutes
the order of the court. Signed January 20, 2011

_____
**Charles Novack**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

MASJID AL RASOOL, INC.

        Debtor.

Case No.  10-55967 CN
Chapter 11

RS No. REI-001

**AMENDED MEMORANDUM DECISION
AND ORDER ON LEROB LLC'S
MOTION FOR RELIEF FROM STAY**

    Before the court is the motion of creditor LEROB, LLC ("Lerob") for an order granting relief from the automatic stay under § 362(d)(2) to proceed with the non-judicial foreclosure of Debtor's real property. The parties dispute the fair market value of the property and whether the property is necessary to the debtor's reorganization. On October 18, 2010, the court held an evidentiary hearing on valuation. Appearances were noted on the record. The court summarizes the applicable facts herein, and finds as follows:

#### FACTUAL BACKGROUND

    Masjid Al Rasool, Inc. (the "Debtor"), a non-profit religious organization, filed a chapter 11 bankruptcy petition on June 8, 2010 to prevent the imminent foreclosure of its real property commonly known as 400 Budd Avenue, Campbell, California (the "Property").  The Property is improved with a single story structure built around 1960.  Although originally designed as a single-family dwelling,

1

AMENDED DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY

1  the 1,832 square foot building is no longer suitable for that purpose. Most of the interior walls have

2  been removed to create two large meeting rooms. It has no bedrooms, and there is no kitchen. While

3  the Property is zoned residential, the Debtor uses the building as a religious meeting facility pursuant

4  to a current Conditional Use Permit. Parking is available in a gravel area near the front of the lot. A

5  secondary detached structure exists behind the main building, but it violates the applicable municipal

6  code.

7       The Property is situated at the intersection of a major commercial artery and a busy residential

8  feeder street. The neighborhood is fully developed and has an urban character with approximately 80%

9  single-family residential dwellings. The Property's rear boundary abuts land where the local water

10 district maintains percolation/re-charging ponds.

11      In March 2005, the Debtor financed its purchase of the Property through a two year $430,500

12 loan from Borel Private Bank & Trust Company at 7.25% per annum. The loan was secured with a first

13 deed of trust recorded against the Property. The note was re-newed six times to extend the note's

14 maturity date, ultimately to December 23, 2009. Despite the extensions, the Debtor defaulted when it

15 failed to repay the note balance upon final maturity.

16      On May 13, 2010, Borel assigned its rights under the note and deed of trust to Lerob, its wholly-

17 owned subsidiary. As of August 17, 2010, the Debtor owed $434,942.95 in principal, interest and other

18 charges. Interest continues to accrue at $100.43 per day.

19      In its petition, the Debtor scheduled the Property's fair market value at $700,000. Lerob,

20 however, submitted an appraisal in support of its motion for relief from stay that valued the Property

21 at only $324,000. At trial, Lerob relied on the same $324,000 appraisal, while Debtor provided a

22 competing appraisal valuing the Property at $600,000, a difference of $276,000.

23      Although the two appraisers agreed that the sales comparison approach is the most appropriate

24 method for valuing the Property, they approached the process from different perspectives and disagreed

25 regarding the highest and best use of the Property. As a result, they chose distinctly different

26 comparison properties and reached substantially different values.

27      Lerob proffered the report and testimony of Ted E. Faravelli, Jr., a licensed appraiser who has

28 been conducting residential appraisals for nearly 30 years. Faravelli has qualified as an expert in more

2

**AMENDED DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

than 150 cases. He is an adjunct professor in real estate appraisal science at San Jose City College and a probate referee for the Santa Clara County Superior Court. Faravelli testified that he appraised the Property "as is," rather than in a hypothetical improved condition. He explained that valuing the Property subject to improvement is problematic because there are too many variables. There is no way to identify the exact condition of the hypothetically restored Property because different prospective owners would make different choices in that regard. In its current condition, Faravelli concluded that the Property's highest and best use is as a meeting facility because the building is not immediately habitable as a home, which a prospective home buyer would expect.

Faravelli inspected the Property and characterized its condition as average. He noted that its location on two busy streets generally provides easy access to the Property, but would impede ingress and egress during rush hours. He did not assign any value to the illegal structure on the Property. From an initial pool of two to three dozen properties, Faravelli selected three comparison properties, all within 1.25 miles of the Property. In choosing comparison properties, Faravelli looked first to the location and lot size because, in his opinion, the Property's value was primarily its land value. Faravelli considered the age and condition of any improvements on the properties as secondary factors. Each of the three comparison properties was zoned as a single family residence and were in average condition. Two of the properties were sold during the spring/summer of 2009 and the third sold in March 2010. The sales prices were $300,000, $413,000 and $430,000. Faravelli did not adjust any sales prices based on the length of time since the sale, testifying that the rate of decline in the Campbell real estate market had slowed during the first half of 2010. After taking other characteristics like lot size, location and condition of the improvements into account, he concluded that the Property was worth $324,000 both at the time of the appraisal and the hearing.

Debtor relied on the report and testimony of Richard B. Cole, a licensed real estate broker and vice president of Cole & Cowan, Inc., a real estate related company that his father founded in 1974. Although not licensed as a certified appraiser, Cole has been appraising real Property in the San Jose area since Cole & Cowan was founded. Additionally, he has owned and remodeled several businesses and residences over the years, most recently in 1998. He has testified as an expert approximately a dozen times. Mr. Cole testified that the highest and best use of the Property would be as a single family

3

1    residence and that the structure on the Property could be returned to a three or four bedroom home for

2    approximately $50,000. Cole is not, however, a general contractor. Accordingly, Cole valued the

3    Property as if restored to a fully functional single family home. He selected three different comparison

4    homes within a one mile radius of the Property that were sold in July and August 2010. Their sales

5    prices ranged between $530,000 and $650,000. While each of Cole's comparison properties had smaller

6    lot sizes, they were improved with updated, finished homes with the approximate square footage of the

7    building on the Property. He identified one particular comparison property as the most comparable to

8    the Property and valued the Property by deducting $50,000 from that comparable's $650,000 sales price

9    to account for the cost of restoring the Property to a single family residence.

10       Cole discounted Faravelli's choice of comparison properties because he believed that they were

11    from the less desirable side of San Tomas Expressway where the property values would be lower. He

12    indicated that the better comparison properties were on the same side of the expressway as the Property.

13    A map of the area, however, reveals that the Property and all six comparison properties are located on

14    the same side of San Tomas Expressway. Cole further indicated that he would not adjust the value of

15    the Property based on its proximity to arterial streets. He opined that the Budd Avenue/San Tomas

16    Expressway intersection was not especially busy based on his familiarity with the area some years ago.

17    He recognized, however, that he did not know what the traffic conditions are like on a current basis.

18

19                                **LEGAL DISCUSSION**

20       Under § 362(d)(2), a bankruptcy court shall grant relief from the automatic stay of an act against

21    property if:

22       (A) the debtor does not have any equity in such property; and

23       (B) such property is not necessary to an effective reorganization.

24    Because the statute is written in the conjunctive, relief is only appropriate when both grounds are

25    satisfied. As the moving party, Lerob has the burden of proving the absence of equity, but it is the

26    Debtor's burden to establish that the Property is necessary to an effective reorganization. 11 U.S.C.

27    § 362(g).

28

**AMENDED DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY**
Case: 10-55967    Doc# 79    Filed: 01/20/11    Entered: 01/20/11 18:11:28    Page 4 of 8

**A.   Debtor has no Equity in the Property.**

Equity is the amount by which the property's value exceeds the total amount of the liens against it. *In re Stewart*, 745 F.2d 1194, 1196 (9th Cir. 1984).  Because Lerob holds a lien against the Property in the approximate amount of $434,900, the Debtor only has equity if the Property's fair market value exceeds that amount.

Here, the two expert appraisers both relied on the same method to value the Property but reached substantially different conclusions.  To weigh the credibility of their respective opinions, the court considered the strength of each appraiser's qualifications and their reports, their testimony on direct and cross-examination and their general ability to substantiate their opinion.  Although one expert was a licensed appraiser while the other was a real estate broker, both appeared qualified to provide an opinion regarding the Property's value.

The primary point of disagreement was whether the Property should be valued "as is" or as if it were restored to a habitable single family residence.  This factor dictated the experts' choice of distinctly different comparable sales which were largely determinative of their ultimate opinion.  The court concludes that valuation of the Property in its "as is" condition is the most appropriate under the circumstances.  As Faravelli explained, valuing a Property in a hypothetically restored condition is inappropriate because the extent of the restoration and the specifics regarding the Property's restored condition are unknowable.  As a result, there is no concrete basis for comparing the Property to the sale of any other.  Similarly, without details, it is impossible to assign an accurate cost to the hypothetical restoration that can be used to adjust sales prices of other actual single family residences.

Because "as is" valuation is more suitable, Faravelli's selection of comparison property sales provide more persuasive evidence of the Property's value than the sales that Cole analyzed .  Moreover, the Debtor's attempt to challenge Faravelli's choice of comparison properties was ineffective.  First, Cole incorrectly testified that Faravelli's comparables were located on the "wrong," less valuable side of the San Tomas Expressway.  Maps included with the appraisal reports conclusively establish that each of Faravelli's comparison properties is on the same side of the expressway as the Property.  Second, Cole criticized Faravelli for choosing properties with large lots, but houses that were substantially smaller than the structure on the Property.  The court finds that Faravelli adequately

5

1    explained this discrepancy.  He testified that in an "as is" condition, the value of the Property was

2    primarily its land value.  As a result, the size of the lot and its location were the primary factors in

3    choosing appropriate comparables.  The size, age and condition of improvements to the Property were

4    only secondary factors.

5         Cole also disagreed with Faravelli as to whether the intersection where the Property is situated

6    is sufficiently busy to reduce its value.  Although Cole testified that there was not enough traffic to

7    justify a reduction, he conceded that his knowledge dated back to when he had a business in the area

8    and that "maybe now, I don't know."  Based on the photographic evidence submitted with the appraisals

9    and the testimony that the San Tomas Expressway is a busy commercial artery, the court concludes that

10   Faravelli properly made adjustments to value for the inferior location of the Property relative to the

11   quieter residential streets where the comparison properties were located.

12        Overall, the court found Faravelli's testimony to be more credible and his report to be thorough

13   and well-substantiated.  As a result, the court accepts the range of value reflected in Faravelli's report

14   and values the Property between $324,000 and $397,000.  This range is based on the adjusted sales

15   prices of the three comparable properties that Faravelli evaluated.  Even at the uppermost end of the

16   range, Lerob's lien is greater than the value of the Property, and as a result, the Debtor has no equity.

17

18
      **B.      Debtor has failed to Establish that the Property is Necessary to an Effective**
19    **Reorganization.**

20        Even where a debtor lacks equity, relief from stay is inappropriate if the debtor can demonstrate

21   that the property is necessary to an effective reorganization that is in prospect.  *United Sav. Assn. Of*

22   *Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375, 108 S. Ct.  626, 632-33 (1988).

23   It is not enough that the property is necessary to a debtor's reorganization, there must also be a

24   "reasonable possibility of a successful reorganization within a reasonable time."  *Id.* at 376, 108 S. Ct.

25   at 633.  Here, Debtor has failed to provide any competent evidence to carry this burden.

26        At the time of the hearing, this case was over four months old.  The Debtor, however, has not

27   offered any competent evidence that it has a reasonable prospect for reorganizing, whether by keeping,

28   refinancing or selling the Property.  Its monthly operating reports do not reflect sufficient income to pay

6

AMENDED DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY

1    its secured debt and there was no concrete evidence of a refinancing arrangement underway. In

2    addition, the Debtor has neither listed the Property for sale nor requested authority to retain a broker.

3    Although Debtor's counsel submitted her own declaration stating that she has made inquiries with the

4    local water district regarding its interest in purchasing the Property, which is adjacent to water district

5    property, the response from the water district was non-committal. It only advised Debtor's counsel of

6    the procedure required to initiate an investigation into whether the district might be interested.

7    According to counsel's declaration, the Debtor chose not to submit the letter necessary to start the water

8    district's investigation. As a result, the Debtor has not provided the court with competent evidence that

9    a prospective sale might allow to Debtor to reorganize effectively.

10        The court's original order of January 19, 2011, which granted relief from the automatic stay

11    subject only to the stay of Fed. R. Bankr. P. 4001(a)(3), was based on the mistaken belief that no notice

12    of default had yet been recorded against the property. This understanding was based on the court's

13    review of Lerob's Relief from Stay Cover Sheet which failed to disclose that Lerob previously posted

14    both the notice of default and the notice of trustee's sale. In light of the court's now correct

15    understanding and to provide the Debtor an opportunity for an orderly transition, the automatic stay shall

16    remain in place through February 28, 2011. Relief from stay is granted effective March 1, 2011.

17

18        Good cause appearing, IT IS HEREBY ORDERED.

19

20                              * * * END OF ORDER * * *

21

22

23

24

25

26

27

28

7

**AMENDED DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY**

**COURT SERVICE LIST**

Rober E. Izmirian
Craig C. Chiang
Ivo Keller
BUCHALTER NEMER
333 Market Street, Suite 2500
San Francisco, CA 94105

Oxana Kozlov
Attorney at Law
649 Dunholme Way
Sunnyvale, CA 94087

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

8

**AMENDED DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY**